# Richmond

OLIVER ROBINSON v. W. FRANK SMYTH, JR., SUPERINTEND-
ENT OF THE VIRGINIA STATE PENITENTIARY.

March 13, 1950.

Record No. 3674.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Frederick T. Gray, Special Assistant*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The petitioner claims to be aggrieved by a final judgment of the trial court rendered on July 6, 1949, discharging a writ of *habeas corpus* previously granted by this court and made returnable to the trial court. The petitioner was remanded to the custody of the superintendent of the Virginia State penitentiary.

The petitioner was last sentenced to ten years in the penitentiary in the Circuit Court of the city of Richmond under Code, 1942 (Michie), section 5054, which provides that a "repeater" may be sentenced for additional service in the penitentiary.

The petitioner has been convicted and sentenced to the Virginia penitentiary on four occasions, as follows:

1. April 6, 1938—Hustings Court of the City of Richmond —5 years—Housebreaking.

2. December 21, 1943—Hustings Court of the City of Richmond—Petersburg—2 years—Housebreaking.

3. December 15, 1947—Circuit of Dinwiddie County—3 years—Forgery.

4. March 17, 1948—Circuit Court of the City of Richmond—Third Offense—10 years.

In addition to those convictions he had been convicted of forgery in the city of Petersburg for which he got six months in jail for forging the name of his attorney, Mr. Wyatt, on a check for $25. He also served a jail sentence for escaping from jail.

The petitioner contends that the conviction and sentence under No. 3 above, on December 15, 1947, in the Circuit

Court of Dinwiddie county, when he was sentenced to 3 years on a charge of forgery was void because he was not assigned counsel, and that therefore the sentence of 10 years under No. 4 above was also void.

The only issue for us to determine is the validity or invalidity of the conviction and sentence in the Circuit Court of Dinwiddie county on the forgery charge.

The petitioner claims that the Dinwiddie sentence is void for the reason that there was a lack of due process of law under the Fourteenth Amendment to the Federal Constitution because the court, in accepting his plea of guilty, did not offer him counsel.

The petitioner alleged in his petition that he was an ignorant colored man, "with four grades of education", and that he was tried on the indictment for forgery without the aid and assistance of counsel. In support he testified that the judge of the circuit court did not offer to assign counsel to aid or assist him and that he had no funds to procure counsel of his own choice. He also testified that he did not plead guilty voluntarily or intelligently; that he did not mean to admit by his plea that he intended to defraud the person whose name he signed to the check for $50, and that he had repaid the money to the merchant who had cashed the forged check. He also testified that he did not know the consequences of his plea of guilty; that he desired the money obtained on the forged check temporarily to have his truck repaired; that he was being paid compensation from the State of West Virginia of $71.56 per month which was due him as the result of an accident he received while working in that State; that Mr. Wyatt, of Petersburg, acted as his counsel and secured an increase in his compensation from $40 to $71.56 per month.

The respondent introduced evidence which, in our judgment, is sufficient to sustain the order entered in this proceeding. The weight of the testimony of the petitioner was for the court below, and the case must be decided upon its own peculiar facts. He contradicted his testimony on direct

examination that he had no education at all, when on cross-examination he admitted that he went to the fourth grade. He further testified that he did not have any funds to secure the services of a lawyer when it appears that he was the owner of a truck which he used in his wood-hauling business and that he was at that time receiving compensation from the State of West Virginia of $71.56 each month. He escaped jail where he was held pending trial and went to West Virginia where he employed a lawyer and paid him $50 to fight extradition. Hawks, a witness who went to West Virginia after him, testified that the petitioner told him (Hawks) that he was not hiring a lawyer in the forgery trial because he wanted to save money, and that he did not want to have any more to do with lawyers.

The petitioner had testified that he did not intend to "beat anyone out of the money", yet on cross-examination, his testimony reveals that he had been convicted on another forgery charge wherein he had obtained $25. The attorney for the Commonwealth in Dinwiddie testified that the petitioner was aware that another penitentiary sentence would result in added time as a third offender and for that reason he had, through his attorney, asked for and received a 12-months jail sentence and a $10 fine in December, 1946, on a previous charge of larceny of an automobile.

The attorney for the Commonwealth further testified that he had been present at most of the criminal trials in Dinwiddie county for the last 25 years, he having been attorney for the Commonwealth that long, and that he had never known an accused to be put on trial for felony when Judge Jefferson did not ask the accused if he had counsel or whether he wanted one. He was corroborated in this evidence by witness Hawks.

In *Hawk* v. *Olson*, 326 U. S. 271, 66 S. Ct. 116, 90 L. ed. 61, it was held that in a *habeas corpus* proceeding the court is not compelled to accept as true the uncontradicted testimony of a convict. Here the petitioner was contradicted in several material respects. At the time of this pro-

ceeding he had a long criminal record. This and the other circumstances, including his conflicting statements, the trial court had the right to consider in weighing his testimony. We think the court was justified in not believing him, and in concluding that Judge Jefferson did offer him counsel, which he refused.

The petitioner had had considerable experience with the courts and with attorneys. It certainly could not be concluded that he was unfamiliar in a general way with legal proceedings and that he waived counsel without understanding the consequences of his act.

His plea of guilty, which we think was intelligently entered, in our opinion, under the facts and circumstances of this case, operated as a waiver of counsel.

In *Stonebreaker* v. *Smyth*, 187 Va. 250, 46 S. E. (2d) 406, Chief Justice Hudgins very comprehensively reviewed the law touching cases of this kind, and concluded that neither the Constitution nor the statutes of Virginia required the court to assign counsel for one accused of crime except under the conditions set forth in Code, 1942 (Michie), section 4776, which statute has no application to the present case. At page 257 the Chief Justice wrote: "The right of a person charged with a criminal offense to have the aid of counsel in his defense has always been held to be a privilege which he may or may not exercise. In the absence of unusual circumstances no invasion of this right is established unless a request appears to have been made and refused. A plea of guilty, intelligently and voluntarily made in open court, ordinarily is regarded as a waiver of a right to have the aid of counsel. See *Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784; *Riddick* v. *Commonwealth*, 135 Va. 724, 115 S. E. 523; *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670; *State* v. *Yoes*, 67 W. Va. 546, 68 S. E. 181, 140 Am. St. Rep. 978."

This court again had occasion in *McDorman* v. *Smyth*, 188 Va. 474, 50 S. E. (2d) 423, to consider this same subject. In that case the petitioner was discharged on a writ of

*habeas corpus* because he was an ignorant youth, eighteen years of age, was given no aid by the trial judge before his plea of guilty was accepted, nor was he advised of the consequences of the plea. The court also held that there were legal problems in which he needed aid, and had competent counsel been appointed to assist him counsel would have been under duty to make a proper decision in accordance with the facts related by his client and the circumstances affecting his trial. Mr. Justice Spratley, in writing the opinion, in substance held that the petitioner there had sustained the burden of proof that for want of assistance of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement, and that he was not accorded the rights to which he was entitled under the due process clause of the Federal Constitution.

The case at bar may be readily distinguished from the *McDorman* and *Stonebreaker Cases*. Here we do not have an ignorant boy, unlearned in the ways of court procedure who had not employed attorneys on previous occasions when he was in trouble. The petitioner expressly stated, as already indicated, that upon this occasion he would not employ counsel because he had had "enough of lawyers; that he was going to be tried and get it over with." And again he stated to another witness that "he had a lawyer in West Virginia and the lawyer got his money and did no good, and he was going to confess his guilt and save money when he got out there." He also stated to a witness that he knew that if he were convicted on this charge he would get additional time under the "repeater" statute.

The last case on this subject decided by the Supreme Court of the United States seems to be *Gibbs* v. *Burke*, 337 U. S. 773, 69 S. Ct. 1247, 93 L. ed. (Advance opinions) 1343. Gibbs was convicted of larceny in Pennsylvania and the supreme court of that State denied a writ of *habeas corpus* in which he alleged that he was denied counsel at the trial, thus being deprived of his rights under the Federal Constitution. The Supreme Court reversed the judgment, and said,

"A failure to request counsel does not constitute a waiver when the defendant does not know of his right to counsel". The court then considered the case of *Betts* v. *Brady* (1942), 316 U. S. 455, 62 S. Ct. 1252, 86 L. ed. 1595, and held that the Constitution does not guarantee to every person charged with a serious crime in the State court the right to the assistance of counsel regardless of circumstances. It is further observed that counsel may be necessary in some noncapital cases in order to secure fairness, and that if fundamental fairness is lacking because of the absence of counsel and the absence of judicial guidance or protection the Fourteenth Amendment is violated.

■ In the *Gibbs Case* the defendant entered a plea of not guilty and attempted to conduct his own defense without the assistance of counsel. From these decisions it is quite apparent that in order for there to be a violation of the Fourteenth Amendment the petitioner must show that there has been some fundamental unfairness in his trial. In the *Gibbs Case* the court said, "Since it is clear that a failure to request counsel does not constitute a waiver when the defendant does not know of his right to counsel, *Uveges* v. *Pennsylvania*, 335 U. S. 437, 69 S. Ct. 184, 93 L. ed. (advance opinions) 152, we proceed to the merits. We consider this case on the theory upheld in *Betts* v. *Brady*, 316 U. S. 455, 62 S. Ct. 1252, 86 L. ed. 1595, that the Constitution does not guarantee to every person charged with a serious crime in a state court the right to the assistance of counsel regardless of the circumstances. *Betts* v. *Brady* rejected the contention that the Fourteenth Amendment automatically afforded such protection. In so doing, however, it did not, of course, hold or intimate that counsel was never required in noncapital cases in state courts in order to satisfy the necessity for basic fairness which is formulated in that Amendment."

As a test of when the accused is entitled to counsel, the court had this to say: "Our decisions have been that where the ignorance, youth, or other incapacity of the defendant made a trial without counsel unfair, the defendant is de-

prived of his liberty contrary to the Fourteenth Amendment. Counsel necessary for his adequate defense would be lacking."

The court then concludes that the fair conduct of the trial depends largely on the wisdom and understanding of the trial judge; that he knows the essentials of a fair trial, and that the primary duty falls on him to determine the need of the accused for counsel. He may guide the defendant without a lawyer past the errors that make trials unfair, and that failure to protect properly the rights of one accused of serious offences is unusual. A fair trial test necessitates an appraisal before and during the trial of the facts of each case to determine whether the need for counsel is so great that the deprivation of the right works a fundamental unfairness.

Finally, petitioner asserts that no evidence was heard by the Circuit Court of Dinwiddie county upon his plea. This is directly in contradiction of the judgment of the court in which it is recited that the court "fully heard the evidence."

Our conclusion is that the trial court was warranted in rejecting the testimony of the petitioner and accepting that of the respondent; that the finding of the court is sustained by the evidence of respondent; that the conclusion that petitioner was offered counsel by Judge Jefferson upon his trial, which offer was refused by him is sustained by the evidence; and that he intelligently waived his right to counsel when he voluntarily entered a plea of guilty is also sustained by the evidence.

The judgment is therefore affirmed.

*Affirmed.*