# Richmond

## RALPH STONEBREAKER v. W. FRANK SMYTH, JR., SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

March 1, 1948.

Record No. 3350.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*W. A. Hall, Jr.,* for the petitioner.

*Harvey B. Apperson, Attorney General,* and *Ballard Baker,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Petitioner is held in custody of respondent under three sentences imposed by the Corporation Court of the city of Newport News on November 17, 1931, and one sentence imposed by the Circuit Court of Warwick county* on November 16, 1931. Each sentence was made on a plea of guilty to four separate indictments charging armed robbery of four different persons at different times. The aggregate period of confinement of the four sentences is 58 years.

In 1943 petitioner, on a writ of *habeas corpus*, attacked the legality of his detention on the ground that when he entered his pleas of guilty to the four indictments he was twenty years of age, ignorant and unfamiliar with court procedure, uninformed as to his right to counsel, and incapable of representing himself; and further, that he was coerced to make the pleas by threats made by the officer who arrested him. Testimony was introduced and, after a full hearing in the Corporation Court of the city of Newport News, the petition was dismissed. His application to this Court for a writ of error was denied. Afterwards he applied to the Supreme Court of the United States for a writ of *certiorari* to review the judgment of this Court and the *certiorari* was denied on October 16, 1944. *Stonebreaker* v. *Smyth*, 323 U. S. 754, 65 S. Ct. 81, 89 L. Ed. 603.

On January 13, 1947, after a delay of more than two years, petitioner filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Virginia, relying on the identical grounds for relief urged in his original petition filed in the State court. The district judge dismissed the petition on the ground that the matter had been fully heard on *habeas corpus* in the State courts and that the Supreme Court of the United States had denied *certiorari*.

*No objection is made to the Warwick County sentence which has been served.

On appeal to the United States Circuit Court of Appeals, Fourth Circuit, the action of the district judge was affirmed because the petitioner had not exhausted his remedies in the State courts (163 F. (2d) 498), and because a judgment on a writ of *habeas corpus,* refusing to release a prisoner, is not a bar to the issuance of another writ upon the same facts. *Waley* v. *Johnston,* 316 U. S. 101, 62 S. Ct. 964, 86 L. Ed. 1302; *House* v. *Mayo,* 324 U. S. 42, 65 S. Ct. 517, 89 L. Ed. 739; 25 Am. Jur. 250, 251.

Thereafter, petitioner filed the petition now under consideration in this Court. The writ was issued, respondent filed his answer, and the parties agreed that the evidence and exhibits taken and filed in the Corporation Court of the city of Newport News in 1943 should be made a part of the record now under consideration. The identical issues, heretofore determined, are thus raised for the second time. They are: (1) Whether the four convictions of armed robbery were based upon coerced confessions; and (2) Whether the failure of the trial court to explain to petitioner the effect of his pleas, or to appoint an attorney to aid him in his defense, is a violation of the "due process" clause of the Fourteenth Amendment to the Federal Constitution.

Only two witnesses testified in the *habeas corpus* proceeding. One was petitioner, and the other James M. Peach, now chief of police of Newport News. Petitioner's testimony was as follows: That on October 3, 1931, he was twenty years of age, had served two years and nine months in the Coast Artillery of the U. S. Army, and was then stationed at Fortress Monroe. While he and one Charlie Panella, another soldier, were returning to Fortress Monroe from Richmond, Panella's car was suddenly stopped by police officers. The occupants were taken out of the car, handcuffed, and jailed in Newport News. Charlie Panella was taken into one room and petitioner into another. Petitioner first told the officers that he was not guilty and did not know anything about the robberies, but while they were discussing the matter Panella was brought

in and said that he had confessed to the robberies, after which petitioner signed a confession stating that he had participated in three robberies in Newport News and one in Warwick county. He said that he made the confessions because the officer told him if he didn't he might get the electric chair; that he was reared in Cumberland, Maryland; that he was ignorant of legal procedure; that he was not guilty of the robberies, had never committed a crime, and had never been in jail or in a court house before. On the next day he and Panella were taken before a police justice in Newport News, pleaded guilty, and were remanded to jail. He had no friends and no money. His father was dead. His mother and twelve brothers and sisters lived in Maryland. On November 10, 1931, he was taken into the Corporation Court of the city of Newport News. The indictments were not read to him, but the judge of the court asked him if he was guilty and he now claims that, "I didn't open my mouth." Neither the policeman nor the trial judge mentioned counsel to him. He did not understand the nature of the crimes charged or the effect of his pleas.

Quite another story is presented by J. M. Peach, the one witness available to the Commonwealth. He said that on the night of October 5, 1931, he received a telephone communication from police officers in Richmond to the effect that two gasoline stations had been held up and robbed; that two men in a brown or tan car with the top back, who had perpetrated the robberies, had left Richmond going in the direction of Newport News. On receipt of this information he and M. J. Yoder, superintendent of police of Warwick county, and two other officers drove out Route 60, west of Newport News, about a mile beyond Lee Hall, and watched passing traffic for the car which the robbers were said to be using in their flight from Richmond. The officer said that soon after reaching this point a car answering the description given him passed and turned off the main highway toward Yorktown; that he and the three officers stopped the car, and on finding

money, money bags, and receipts obtained from the robberies in Richmond, they arrested petitioner and Charlie Panella. A gun was found in the back of the car.

The prisoners were carried in separate cars to Newport News, placed in separate rooms. Petitioner had very little to say before reaching the court house, but after they were placed in separate rooms the officer warned petitioner that anything he said would be used against him. The officer denied that he or anyone made any threats to induce Stonebreaker to confess. The electric chair was not mentioned. He further said, "I advised him whatever he told us would be told in court at his trial." He was asked the following question and gave the following answer:

"Q. Now, isn't it correct that when the officers first talked to Stonebreaker at the headquarters that he denied it?

"A. Yes, he denied it until Panella come in and stated that he had told them all about it, and when he did he proceeded to—the two of them sat down there together and went right over it, how the hold-ups happened, how they punched one of the men around with a gun up there, and the man was so scared he couldn't get the safe open. They made no denial of it at all, and nobody threatened either one of these men."

When Peach was asked if he advised petitioner of his right to have counsel present, he said, "I advised him whatever he told us would be told in court at his trial, any questions he didn't want to answer he didn't have to.

\*    \*    \*    \*    \*    \*

"Q. You realized that these boys couldn't have been convicted, didn't you, unless they confessed; isn't that right?

"A. No, we had them identified."

Captain Peach further testified that he notified the Army officers at Fortress Monroe that he held two soldiers stationed there under arrest. On the back of the indictment returned by the grand jury in Warwick county it appears that "Cpl. Staves, Battery B. 51, Fort Monroe" was a witness in the proceedings.

Petitioner's testimony is further contradicted by the record which he invokes to sustain his allegations. He said that he did not plead to the indictments and that he was in the Corporation Court of the city of Newport News only once. The record shows that on November 10, 1931, he was led to the bar in the custody of an officer and on his arraignments he pleaded guilty. On these pleas he was convicted and the terms of confinement stated, but sentences were not actually pronounced until November 17, 1931, on which day each of three orders shows that " * * * the prisoners were again led to the bar in the custody of the jailor of this Court, and it being demanded of the prisoners if anything for themselves they had or knew to say why this Court should not now proceed to pronounce judgment against them according to law, and nothing being offered or alleged in delay thereof, * * * ," sentences were then pronounced.

On this record we find that the confessions of petitioner were not obtained by threats or coercion.

This brings us to the question of whether or not failure to appoint counsel under the circumstances violates any law of Virginia or the "due process" clause of the Fourteenth Amendment of the Constitution of the United States.

There is no express mandate either in the Constitution or the statutes of Virginia requiring the court to appoint counsel for one accused of crime, except upon conditions defined in Code, section 4776, amended, 1940 Acts, 345. Section 8 of the Bill of Rights, among other things, provides that a person "shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers; nor be compelled in any criminal proceeding to give evidence against himself, nor be put twice in jeopardy for the same offense."

The phrase, "the law of the land," as used above has been construed to mean that no person in a criminal case shall be denied the right to the assistance of counsel of his own selection, and that no person indicted for an

infamous offense who is financially unable to engage counsel shall be denied the aid of counsel if this fact is brought to the attention of the trial judge. It has never been construed to mean that the court, in the absence of request, *must* appoint counsel to assist the accused in the trial of every criminal case.

The only pertinent statutory provision regarding the appointment of attorneys for indigent persons charged with a criminal offense is found in the Code of 1942 (Michie), section 3518, which was adopted in 1916—Acts of 1916, chapter 373. This section provides that when a trial judge appoints an attorney to defend "a poor person charged with an offense that may be punished by death, or by confinement in the penitentiary for a period of more than ten (10) years, he may direct that a sum of money not to exceed twenty-five dollars ($25.00) shall be paid out of the treasury of such county or city * * * " as compensation for such defense. It will be noted that neither the appointment of counsel nor the payment of compensation is mandatory upon the trial judge. Both are left to his discretion.

The right of a person charged with a criminal offense to have the aid of counsel in his defense has always been held to be a privilege which he may or may not exercise. In the absence of unusual circumstances no invasion of this right is established unless a request appears to have been made and refused. A plea of guilty, intelligently and voluntarily made in open court, ordinarily is regarded as a waiver of a right to have the aid of counsel. See *Barnes* v. *Commonwealth*, 92 Va. 794, 23 S. E. 784; *Riddick* v. *Commonwealth*, 135 Va. 724, 115 S. E. 523; *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670; *State* v. *Yoes*, 67 W. Va. 546, 68 S. E. 181, 140 Am. St. Rep. 978.

In *Wilkinson* v. *Youell*, 180 Va. 321, 23 S. E. (2d) 356, we reviewed former decisions of this and other courts on the subject and said: "Criminal convictions, resulting from trials in which it has been alleged that counsel has not

been assigned to indigent prisoners, have been the source of fruitful litigation in *habeas corpus* cases in recent years. Failure to appoint counsel, alone, is not a denial of due process of law within the intendment of the 14th Amendment of the Federal Constitution. *Betts* v. *Brady*, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595. Waiver of a right to be represented by counsel will ordinarily be implied where the accused appeared without counsel and failed to request that counsel be assigned him. *Buckner* v. *Hudspeth*, 105 F. (2d) 396. 'Where an accused personally enters a plea of guilty to a crime whereof he stands charged, and does so understandingly, freely and voluntarily without asking the assistance of counsel, a waiver of the right to be represented by counsel may fairly be inferred. *Logan* v. *Johnston*, 28 F. Supp. 98; *Erwin* v. *Sanford*, 27 F. Supp. 892.' *Cundiff* v. *Nicholson*, 107 F. (2d) 162." See *Cottrell* v. *Commonwealth*, *post*, p. 351, 46 S. E. (2d) 413.

The procedure on a plea of guilty, voluntarily entered by the accused is quite informal. The usual practice when the accused has no counsel is for the trial judge to ask if he has any witnesses present or desires any to be summoned. If the accused responds in the affirmative, the witnesses are summoned. The witnesses for the Commonwealth are either examined or cross-examined by the trial judge. The accused is given an opportunity to make any statement that he desires, or to introduce any pertinent evidence in mitigation of the offense; after which the trial judge alone determines the measure of punishment. It was said in *Dixon* v. *Commonwealth*, 161 Va. 1098, 172 S. E. 277: "The accused and the public were both entitled to the independent judgment of the court upon the degree of his guilt and the punishment to be inflicted, uninfluenced by the judgment or advice of the 'jury' or other bystanders."

Few if any of the incidents of the trial are set forth in the record as the State does not give trial judges the aid of secretaries or stenographers. The clerk of the court, without making any notations of the incidents of the trial,

prepared the formal order declaring the innocence or guilt of the accused and the measure of punishment determined by the judge.

Under these circumstances, after a lapse of twelve or fifteen years, it is not surprising that the Commonwealth is unable to prove with any degree of accuracy just what took place at the trial. Under the Constitution, the statutes, and judicial decisions of this State it would seem that the petitioner is not entitled to be released.

However, petitioner is entitled to rights guaranteed under the broadened concept of the "due process" clause of the Fourteenth Amendment to the Federal Constitution as expressed in recent decisions of the Supreme Court of the United States, and it is the duty of this Court to secure to him these rights if his allegations and proof bring him within their influence.

On the identical record the members of the United States Circuit Court of Appeals, Fourth Circuit, in *Stonebreaker* v. *Smyth, supra,* were unanimous in their opinion that the sentences of the Corporation Court of the city of Newport News were void because the trial court had accepted petitioner's plea of guilty without offering him aid of counsel or explaining the effect of the pleas. Two opinions were rendered. The minority opinion held, in unrestrained language, that petitioner was entitled to immediate release by the Federal Court. Judge Parker, who rendered the majority opinion, after declaring that correct procedure would compel petitioner to exhaust his remedy in the State courts before he would be entitled to relief in the Federal Court, said: "The petition sets forth facts upon which, under recent decisions of the Supreme Court, petitioner is probably entitled to relief in the proper tribunal. See *De Meerleer* v. *Michigan,* 329 U. S. 663, 67 S. Ct. 596, 91 L. Ed. 471; *Canizio* v. *New York,* 327 U. S. 82, 66 S. Ct. 452, 90 L. Ed. 545; *Rice* v. *Olson,* 324 U. S. 786, 65 S. Ct. 989, 89 L. Ed. 1367; *Tomkins* v. *Missouri,* 323 U. S. 485, 65 S. Ct. 370, 89 L. Ed. 407. * * * * *

"The order appealed from will be affirmed, without

prejudice, however, to the right of petitioner to apply to the state courts for relief. Application to those courts will enable them to reconsider their prior ruling in the light of recent Supreme Court decisions with review by the Supreme Court, and will avoid the necessity of having any lower federal court review proceedings of a state tribunal."

The facts in *De Meerleer* v. *Michigan, supra,* were that on May 16, 1932, a boy 17 years of age was charged with murder. On the same day the information was returned, the prisoner was arraigned, tried on a plea of guilty, convicted of first degree murder and sentenced to life imprisonment. The *per curiam* opinion of the court said that he was hurried through unfamiliar legal proceedings without a word being said in his defense. "At no time was assistance of counsel offered or mentioned to him, nor was he apprised of the consequences of his plea." The judgment of the Supreme Court of Michigan refusing leave to file a delayed motion for a new trial was overruled and a new trial granted.

In *Canizio* v. *New York, supra,* the facts were that when the accused was arraigned he pleaded guilty. He was unfamiliar with his legal rights and procedure and the court failed to inform him of his right to counsel, but before sentence was pronounced counsel was appointed and appeared in an effort to secure a low sentence. At that time the attorney could have moved to withdraw the plea of guilty and pleaded "Not guilty." Mr. Justice Black, who rendered the decision of the Court, said, "But the District Attorney's affidavit and the record and stenographic transcripts of the original proceedings in which petitioner was sentenced show that petitioner was actively represented by counsel in long hearings during the day of sentence. In our opinion these new facts, undenied, so far refuted petitioner's entire constitutional claim as to justify the court's holding that a hearing on petitioner's motion was unnecessary."

In *Rice* v. *Olson, supra,* on a writ of *certiorari* to review

a judgment of the Supreme Court of Nebraska affirming a dismissal of a petition for a writ of *habeas corpus*, the facts appeared that the petitioner, an Indian, without the benefit of counsel, pleaded guilty to a charge of burglary in the state court and was sentenced to from one to seven years. Petitioner alleged that in making the plea of guilty he did not waive his right to counsel by either word or act. He further alleged that the crime was committed on an Indian Reservation which was exclusively in the Federal jurisdiction. In reversing the case, Mr. Justice Black, speaking for the Court, said: "In affirming, the Nebraska Supreme Court stated that 'It is not necessary that there be a formal waiver; and a waiver will ordinarily be implied where accused appears without counsel and fails to request that counsel be assigned him, particularly where accused voluntarily pleads guilty.' It is apparent that the court's affirmance did not rest on its statement that a plea of guilty 'ordinarily implied' a waiver of the right to counsel, but upon a holding that such a plea 'absolutely' and finally waives that right. This is inconsistent with our interpretation of the scope of the Fourteenth Amendment."

The fourth case cited and relied upon by the United States Circuit Court of Appeals, Fourth Circuit, for the position taken, was *Tomkins* v. *Missouri, supra.* It was held that a request for counsel by one accused of a capital offense who was unable to employ counsel and incapable of adequately making his own defense is unnecessary. See *Williams* v. *Kaiser*, 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398.

The Federal courts have consistently held that under the provisions of the Sixth Amendment to the Federal Constitution counsel must be furnished to an indigent defendant prosecuted in the Federal courts whatever the circumstances. See *Palko* v. *Connecticut*, 302 U. S. 319, at p. 327, 58 S. Ct. 149, at p. 152, 82 L. Ed. 288; *Johnson* v. *Zerbst*, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A. L. R. 357; *Betts* v. *Brady*, 316 U. S. 455, 464-465, 62 S. Ct. 1252, 1257, 86 L. Ed. 1595.

Recent decisions of the Supreme Court of the United States reveal a sharp division as to the exact meaning of the "due process" clause of the Fourteenth Amendment when applied to convictions of criminal offenders in state courts. Four members of the Court expressed the view that "due process" under this Amendment should have the same meaning that the Federal courts have applied to the provision of the Sixth Amendment regarding the assistance of counsel in criminal cases in Federal courts. *Foster* v. *Illinois*, 332 U. S. 134, 67 S. Ct. 1716, 91 L. Ed. 1542; *Gayes* v. *New York*, 332 U. S. 145, 67 S. Ct. 1711, 91 L. Ed. 1549; 33 Va. Law Rev. 731; 13 University of Chicago Law Rev. 266; 23 Texas Law Rev. 66; 27 Marquette Law Rev. 34.

The views of the majority were expressed by Mr. Justice Frankfurter in *Foster* v. *Illinois*, *supra*, as follows: "Prosecutions in State courts are not subject to this fixed requirement. So we have held upon fullest consideration. *Betts* v. *Brady*, *supra*. But process of law in order to be 'due' does require that a State give a defendant ample opportunity to meet an accusation. And so, in the circumstances of a 'particular situation,' assignment of counsel may be 'essential to the substance of a hearing' as part of the due process which the Fourteenth Amendment exacts from a State which imposes sentence. *Palko* v. *Connecticut*, *supra*, 302 U. S. 319, at page 327, 58 S. Ct. 149, at page 152, 82 L. Ed. 288. Such need may exist whether an accused contests a charge against him or pleads guilty.

"The rationale of this application of due process was first expounded in *Powell* v. *Alabama*, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527. In following that case our recent decisions have spoken of 'the rule of *Powell* v. *Alabama*,' or 'the requirements of *Powell* v. *Alabama*,' thereby indicating the essential scope of the doctrine. See *Williams* v. *Kaiser*, 323 U. S. 471, 476-477, 65 S. Ct. 363, 366, 89 L. Ed. 398; *Tomkins* v. *Missouri*, 323 U. S. 485, 488, 65 S. Ct. 370, 372, 89 L. Ed. 407. And so, in every case in which this doctrine was invoked and due

process was found wanting, the prisoner sustained the burden of proving, or was prepared to prove but was denied the opportunity, that for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement. See *Powell* v. *Alabama, supra,* 287 U. S. 45, at pages 51, 53, 56, 57-58, 53 S. Ct. 55, at pages 57, 58, 59, 60, 77 L. Ed. 158, 84 A. L. R. 527; *Smith* v. *O'Grady,* 312 U. S. 329, 334, 61 S. Ct. 572, 574, 85 L. Ed. 859; *Williams* v. *Kaiser, supra,* 323 U. S. 471, at pages 472, 473, 474, 476, 477, 65 S. Ct. 363, at pages 364, 365, 366, 89 L. Ed. 398; *Tomkins* v. *Missouri, supra,* 323 U. S. 485, at pages 486-487, 65 S. Ct. 370, at page 371, 89 L. Ed. 407; *House* v. *Mayo,* 324 U. S. 42, 45-46, 65 S. Ct. 517, 519, 520, 89 L. Ed. 739; *White* v. *Ragen,* 324 U. S. 760, 762, 763, 65 S. Ct. 978, 979, 980, 89 L. Ed. 1348; *Rice* v. *Olson,* 324 U. S. 786, 788-789, 65 S. Ct. 989, 990, 991, 89 L. Ed. 1367."

Code, section 4405, provides that robbery from the person by threat or presentation of firearms shall be punished by death or by confinement in the penitentiary for life or for any term not less than eight years. The petitioner states that he made a false confession to being a participant in four armed robberies; that after the confession, without the benefit of the advice of counsel and without having the consequences of his pleas of guilty explained to him, and in ignorance of his right to demand assistance, he pleaded guilty to all four indictments for armed robbery and received accumulated sentences of 58 years confinement.

There is no evidence which expressly contradicts this testimony. The chief of police states that he never suggested to the petitioner that he was entitled to the aid of counsel. The respondent did not or could not introduce other evidence in contradiction of petitioner's statement. Under the circumstances we have a capital case in which there is no express denial of the claim that the plea of guilty was received without any explanation by the trial court of its effect; and, further, that no counsel was offered this

petitioner, nor was he advised of his right to have the aid of counsel in his defense.

■ Petitioner was confronted with three indictments, under any one of which he could have been sentenced to the electric chair. The only evidence introduced by either the Commonwealth or the petitioner was petitioner's confession made to the police officer. A reconsideration of these facts convinces us that under the broadened concept of the "due process" clause of the Fourteenth Amendment petitioner has not had a full and fair hearing, and that "an ingredient of unfairness actively operated in the process that resulted in his confinement."

It follows that the sentences imposed upon petitioner by the Corporation Court of the city of Newport News are void, but he is not entitled to release until that court has disposed of the pending indictments against him.

Respondent is directed to transfer the custody of petitioner to the Corporation Court of the city of Newport News for such further proceedings as the Attorney for the Commonwealth may deem advisable. If petitioner is tried and convicted on any one or more of the three indictments pending against him, then he should receive proper credit for time served under any one of the three indictments and credit for good conduct if, under pertinent rules and regulations of State authorities, he is entitled to such credit. It is so ordered.