**UNITED STATES of America ex rel. Oliver S. SMITH, Petitioner-Appellant,**

**v.**

**J. Vernal JACKSON, Warden of Clinton Prison, Respondent-Appellee.**

**No. 194, Docket 23823.**

United States Court of Appeals
Second Circuit.

Argued Jan. 13, 1956.

Decided May 22, 1956.

Rehearing Denied June 28, 1956.

---

744

Lloyd F. MacMahon, New York City (William G. Kaelin and Kramer, Marx, Greenlee, Backus & MacMahon, New York City, of counsel, on the brief), for Oliver S. Smith.

Jacob K. Javits, Atty. Gen., of the State of New York (James O. Moore, Jr., Sol. Gen., Albany, N. Y., Samuel A. Hirshowitz, Asst. Atty. Gen., and Michael Freyberg, Deputy Asst. Atty. Gen., of counsel, on the brief), for respondent-appellee.

Before CLARK, Chief Judge, and FRANK and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

Oliver Smith's petition raises the question whether, while imprisoned by the State of New York as a second felony offender, he is entitled to a federal court hearing on serious charges that his first felony conviction in Virginia was obtained in violation of his constitutional rights, although he escaped and became a fugitive from Virginia justice shortly after conviction and Virginia will not

listen to him until he is able to appear there.

. The District Judge has granted a certificate of probable cause stating that his decision denying the petition without a hearing "involves a debatable question as to the exhaustion of State Court remedies" and thus we review his decision pursuant to 28 U.S.C.A. § 2253.

Although Smith was without counsel until he reached this court, he has sought continuously since 1950 to set aside his 1946 conviction in Virginia, as appears from his numerous petitions, from correspondence, and from the briefs. All of his charges are thus far virtually uncontradicted and at this point we must assume them to be true in order to determine whether, under the somewhat unusual circumstances of this case, they should be tested by a New York federal court while Smith is still imprisoned by the State of New York.

In January 1946 Oliver Smith, a negro, then 18 years old and of limited education, was arrested in Newport News, Virginia. On January 14 an indictment was returned in the Corporation Court of Newport News charging Oliver Smith, Robert Smith and Percy Lee Kemp with having robbed "by violence to his person," one Samuel Gregory of $166.18 at Newport News in May 1945, no exact date in May being specified in the indictment. Under Virginia law this was a capital offense. Virginia Code 1942, § 4405, now Virginia Code 1950, § 18–163.

In his petition Smith alleges that he was kidnapped by police officers and "held incommunicado for 38 days, during which time he was not permitted to see his family, friends or counsel, nor was he arraigned before a magistrate" and during this detention he "was by means of force, bodily harm and promises of immunity, tricked into a confession"; that the district attorney "withheld and suppressed the important fact that he had prosecuted one Charles Tabb for the very same alleged offense 8 months prior, and the said Charles Tabb was convicted"; that while Charles Tabb was point-

ed out by the accuser and identified, "petitioner was forced to plead guilty due to his forced confession, without ever seeing the person he is accused of having robbed."

On February 18, 1946 Smith pleaded guilty as did his two co-defendants and each was sentenced to 9 years in prison. Smith alleges that he then told Judge Herbert G. Smith that he had been forced to sign a confession and that he wanted to go to trial as he was not guilty; that Judge Smith stated that as Oliver Smith had signed a confession in police headquarters he was bound to plead in accordance therewith and denied him a jury trial. He further charges that he was threatened with the maximum punishment of death if he did not plead, although he does not state who made this threat. He alleges that his conviction was based solely on his confession and that if he had been granted a jury trial his confession would have proven useless and he would have been acquitted. Smith then sets forth the allegation which gives us most concern, namely: "That the petitioner was not represented by counsel or was he advised as to his rights to counsel by the court." In support of this serious charge he called to the attention of the District Court that the records of the Corporation Court nowhere show the name of any counsel. Indeed the record of the order entered on February 18, 1946, certified by the clerk of the court, in its pertinent part seems to support this claim:

"This day came the attorney prosecuting for the Commonwealth, and the prisoners, Oliver S. Smith, Robert Smith and Percy Lee Kemp (who were represented by counsel), were led to the bar in the custody of the jailor of this Court, and being arraigned, each pleaded guilty to said indictment, and upon advice of counsel, and with the consent of the attorney prosecuting for the Commonwealth, and the Court, waived trial herein by jury, and the Court proceeded to hear and determine

this case without the intervention of a jury, and the evidence and arguments of counsel being fully heard, the Court doth find the said Oliver S. Smith, Robert Smith and Percy Lee Kemp each guilty as charged in said indictment, and doth fix and ascertain the punishment of each to be imprisonment in the public jail and penitentiary house of this Commonwealth for the term of nine (9) years each."

Further along the order gives Oliver Smith credit for one month and eight days of time spent in jail awaiting trial. The *pro forma* nature of the recital that Smith was "represented by counsel" and the assertions of the clerk of the Corporation Court in his correspondence with Smith that that court has no minutes or any records other than the indictment and the order on the guilty plea seems to us to raise a serious question as to the nature of "counsel," if any, which was afforded to Smith in answering this capital charge. Further credence is given to Smith's charges by the fact that the Corporation Court of Newport News has on at least one other occasion been found similarly remiss in protecting the rights of persons accused of serious crimes. Stonebreaker v. Smyth, 1948, 187 Va. 250, 46 S.E.2d 406. See also 4 Cir., 1947, 163 F.2d 498.

■ Ever since Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, our federal-state system has been charged with the responsibility of seeing to it that the indigent and the untutored are advised and represented by counsel in all cases and under any circumstances where the forfeit for guilt may be a life. To impose the penalties of law in such cases without the benefit of counsel is a deprivation of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution.

■ Nor has Smith forfeited his right to complain of the Virginia proceedings by not having appealed from the Virginia conviction. If it be true that he had no counsel, certainly there

was no one to tell him what he must do to preserve his rights. Williams v. Kaiser, 1945, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L.Ed. 398; see Brown v. Allen, 1953, 344 U.S. 443, 485, 73 S.Ct. 397, 97 L.Ed. 469.

On June 26, 1946 Smith escaped, became a fugitive from justice and is next heard of in Kings County, New York, where he pleaded guilty to robbery in the third degree on April 30, 1947. Sentenced as a second felony offender under New York Penal Law, McK.Consol. Laws, c. 40, § 1941 on May 7, 1947, Smith was first given five to twenty years which was later reduced to from five to fifteen years.[1] Had Smith been treated as a first offender the maximum sentence would have been ten years. New York Penal Law, § 2129.

In November 1950 Smith filed the first of four petitions for habeas corpus in the District Court for the Northern District of New York, the last petition which is now before us having been filed July 28, 1955. It is apparent from Judge Brennan's opinion denying the fourth application that prior to July 1955 Smith filed numerous petitions in the Virginia courts in an attempt to have his 1946 conviction set aside. Correspondence in the file shows that on August 3, 1951, October 12, 1953, and March 1, 1955 applications by Smith to the Corporation Court of Newport News were denied on the ground that that court had no jurisdiction after the term of court during which Smith was convicted.

On March 15, 1954 the Virginia Supreme Court of Appeals reviewing the denial of Smith's applications rendered a brief opinion dismissing Smith's "numerous motions, petitions and letters":

"The court upon the investigation it caused to be made finds that the petitioner has escaped from the custody of the Superintendent of Vir-ginia State Penitentiary and fled to the State of New York where he is now confined in the penitentiary of that State for violating its criminal laws. Being a fugitive from justice from the Commonwealth of Virginia, this court has no jurisdiction to consider his petitions and motions for relief and in addition thereto the court finds no merit to the petitions and motions filed herein and accordingly they are hereby dismissed."[2]

■ We do not know what was before the highest court of Virginia as to the merits. Certiorari was denied by the Supreme Court on May 16, 1955, Smith v. Commonwealth of Virginia, 349 U.S. 932, 75 S.Ct. 776, 99 L.Ed. 1262. Examination of the Virginia statutes and cases reveals no remedy by which the petitioner can attack his Virginia conviction while he is in custody in New York. He may not attack it in the sentencing court after the expiration of the term of court or the passage of 15 days from entry of the judgment. Virginia Code of 1942, § 5962a, now Virginia Code, 1950, § 17-31. Bridges v. Commonwealth, 1950, 190 Va. 691, 700, 58 S. E.2d 8, 12. Apparently the writ of error *coram nobis* has never been employed in criminal cases in Virginia. Freedman, The Writ of Error Coram Nobis, 3 Temple L.Q. 365, 386 (1929). The time for appeal from the conviction expired 4 months after the entry of judgment, Virginia Code of 1942, § 6337, now Virginia Code, 1950, § 8-463. Habeas corpus is available in Virginia whenever a person is "detained without lawful authority", Virginia Code of 1942, § 5848, now Virginia Code, 1950, § 8-596, but this obviously refers to detention in the state of Virginia. Cf. Bowling v. Commonwealth, 1918, 123 Va. 340, 343, 96 S.E. 739, 740. Habeas corpus is not available to test a conviction if the petitioner is not held in detention under it.

---

1. Smith applied to the sentencing judge for a re-sentence in accordance with a "promise" made before plea. The judge treated this as an application in the form of *coram nobis* and reduced his sentence accordingly.

2. This decision is unreported, but a certified copy of it appears in the record before us.

McDorman v. Smyth, 1948, 187 Va. 522, 47 S.E.2d 441.

Nor does it appear that there is any New York remedy by which the petitioner can attack the validity of his Virginia conviction. In United States ex rel. Turpin v. Snyder, 2 Cir., 1950, 183 F.2d 742, we examined the New York cases and concluded that a prisoner in custody as a second offender in New York has no remedy in its courts whereby he can attack his out-of-state conviction for the first offense. See also United States v. Morgan, 2 Cir., 1953, 202 F.2d 67, 69, affirmed 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. Thus the petitioner could not attack the validity of his prior conviction before the court which sentenced him as a second offender. New York Penal Law, § 1943; People ex rel. Prisament v. Brophy, 1941, 287 N.Y. 132, 135–136, 38 N.E.2d 468, 139 A.L.R. 667, certiorari denied 1942, 317 U.S. 625, 63 S.Ct. 62, 87 L.Ed. 506. And in People v. McCullough, 1949, 300 N.Y. 107, 89 N.E.2d 335, certiorari denied 1950, 339 U.S. 924, 70 S.Ct. 615, 94 L.Ed. 1346, the New York Court of Appeals held that although the proper remedy by which to attack the constitutionality of a conviction is the writ of error *coram nobis*, that remedy is not available in New York to attack a judgment rendered in another jurisdiction. It has been argued on this appeal, however, that there is language in the McCullough case which suggests that the petitioner may have a remedy in New York by way of habeas corpus, Judge Fuld saying at pages 110–111 of 300 N. Y. at page 337 of 89 N.E.2d:

"Since defendant does not here assert that the Federal court lacked jurisdiction of his person or of the offense charged against him, he may not in this State question its judgment by writ of habeas corpus * * * *at least where, as here, there is no showing that defendant may not seek redress for the alleged violation of constitutional right in the court wherein the judgment was rendered.*" (Emphasis added.)

This may be construed as leaving open the question whether habeas corpus is available to a prisoner situated as Oliver Smith is here. The governing New York statute appears to limit the use of habeas corpus to the raising of jurisdictional questions. Sec. 1231 of the New York Civil Practice Act provides that a person is not entitled to habeas corpus:

"Where he * * * is detained by virtue of the final judgment or decree of a competent tribunal of * * * criminal jurisdiction".

Although the New York cases have strictly limited the use of habeas corpus, the Court of Appeals has suggested that in rare circumstances it might be used to test constitutional questions:

"It may be that the courts of this State would be constrained to extend the scope of the writ beyond the limitations placed upon it by ancient practice and procedure, even though that practice and procedure has been crystallized by the statute, if a case should arise where a person restrained of his liberty under a judgment of a court of competent jurisdiction alleges in his petition facts sufficient, if established, to show that the judgment fails to satisfy the requirements of due process on grounds for which the State has provided no other corrective procedure." Morhous v. Supreme Court of New York, 1944, 293 N.Y. 131, 139–140, 56 N.E.2d 79, 84.

■■ It does not appear in the record that the petitioner has sought any remedy in the courts of New York although the brief on appeal points out that he applied for *coram nobis* in the Kings County Court in 1951 and the application was denied. If there is a state remedy available, the petitioner must of course exhaust it before he can obtain a writ of habeas corpus in the federal district court. But here the existence of a New York remedy is so doubtful and uncertain that we are constrained to find that the petitioner may now proceed in the federal court without further resort to state process. Cf. Marino v. Ragen,

1947, 332 U.S. 561, 563, 68 S.Ct. 240, 241, 92 L.Ed. 170 (concurring opinion); Hillsborough Tp., Somerset County, N. J. v. Cromwell, 1946, 326 U.S. 620, 625–626, 66 S.Ct. 445, 90 L.Ed. 358.

■ Since the petitioner alleges a substantial constitutional claim which he cannot now vindicate in the courts of any state, there seems no reason to deny him a hearing in the federal district court. The respondent, however, urges that by fleeing from Virginia Smith forfeited his right to attack the Virginia conviction. The argument runs something like this: If Smith had stayed in Virginia he would have been able to attack his conviction in the Virginia courts, but by becoming a fugitive from justice he made himself ineligible for the Virginia remedies. Thus his inability to assert those remedies is self-imposed and he should not be excused from exhausting them as a prerequisite to federal relief. To this may be added certain considerations of policy—the undesirability of testing a Virginia conviction in a federal court in New York and a court's reluctance to listen to a prisoner who is a fugitive from justice.

We do not find these arguments persuasive. It would of course be preferable that Smith's conviction be reviewed either by a Virginia court or by a federal court sitting in Virginia. Such a court would be more familiar with the customs and practices, knowledge of which gives greater meaning to the testimony and records which the reviewing court must appraise. It is also true that the denial of a remedy here might have some small effect in deterring escapes from prison. But that end can better be accomplished by imposing more appropriate penalties. Thus Congress recently made it a federal crime to flee across state lines to avoid confinement after conviction for serious crimes, including robbery, 18 U.S.C.A. § 1073, and Virginia may, if it wishes, impose similar penalties for escaping from custody.

Against these considerations stands the prospect that an innocent man convicted of crime in violation of his constitutional rights may unjustly suffer the severe penalties meted out in New York to second offenders. For unless there is a remedy in the federal court Smith has no way of challenging the sentence imposed by the New York court. He may of course seek to challenge the Virginia conviction after he has served his New York sentence and been returned to the Virginia authorities. But it will then be impossible for any authority to give back the extra years spent in New York confinement.

■ Nor are we convinced that we should find that Smith by his conduct has waived his right to complain of his present predicament. Smith alleges that he was 18 years old at the time of his arrest, that he was held incommunicado, that he was deprived of counsel, and that from beginning to end his treatment was tainted with coercion and abuse. We have pointed out above that under these circumstances he waived none of his rights by failing to appeal from his conviction. For the same reasons it would not be appropriate to hold that he had waived those rights by fleeing from Virginia. An untutored 18 year old boy, without benefit of counsel, could not have been aware of what he was forfeiting by his flight.

Under these circumstances we cannot find that Smith has forfeited the right to challenge his present confinement so far as it is based on an allegedly unconstitutional prior conviction.

The respondent presses upon us cases involving extradition where it has been held that an escaped prisoner cannot attack by habeas corpus in the asylum state the legality of his confinement in the demanding state. E. g. Sweeney v. Woodall, 1952, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114. But those cases do not govern this one. The denial of a remedy there meant that the prisoner would be handed over forthwith to the authorities of the state where he had originally been convicted. Thus he could then seek his remedy in the state or federal courts of that jurisdiction. Under those circumstances it was more appropriate that he

seek his remedy in that fashion. In the case now before us, however, the petitioner is challenging, not the confinement which is to take place in Virginia, but his present confinement in New York. If we remit him to his Virginia remedy he will be deprived of any means of avoiding the New York penalty which flows from the allegedly unlawful Virginia conviction. We think this case is governed by our decision in United States ex rel. Turpin v. Snyder, 2 Cir., 1950, 183 F.2d 742. There we were concerned with a prisoner sentenced in New York as a second offender on the basis of a prior conviction in Wisconsin. He was on parole from the Wisconsin conviction when he came to New York. While confined in New York he sought to challenge in Wisconsin his first conviction, but was denied a remedy there because he was not in that state's custody. We held that since he could challenge the conviction neither in Wisconsin nor in New York, he had exhausted his state remedies within the meaning of 28 U.S.C.A. § 2254 and was entitled to proceed in the federal district court.

▇▇▇ The respondent argues finally that the time is not ripe for challenging Smith's sentence as a second offender since he has not yet served the maximum sentence which could have been imposed upon him as a first offender—in this case ten years. We have rejected a similar contention before. See United States ex rel. Lavelle v. Fay, 2 Cir., 1953, 205 F. 2d 294, 295. The petitioner has already served nine years. He became eligible for parole in 1952 but has been denied parole four times. If he were confined under a maximum sentence of ten rather than fifteen years, the parole board might well have acted differently. Moreover, if the petitioner had been confined under a definite sentence of ten years and had been granted the full good behavior allowance permitted by New York law, he would have been entitled to release long before this. New York Correction Law, McK.Consol.Laws, c. 43, § 230. But more important than these considerations is the fact that there is no reason to assume that the petitioner would have received the maximum sentence for his crime if he had been sentenced as a first offender. If the Virginia conviction was erroneously taken into account, Smith is entitled to resentence as a first offender. See United States v. Morgan, 2 Cir., 1953, 202 F.2d 67, 68, affirmed 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. On resentence the term imposed might well be less than the nine years he has already served.

On the serious and thus far undisputed charges of violation of his constitutional rights Smith is entitled to a hearing on the merits somewhere at a time before he has paid the price of which possible vindication would relieve him. As the only place where this can be done is the Northern District of New York we reverse the order and remand the petition for an early hearing on the merits.

At our request the National Legal Aid Association has selected counsel to represent Smith on this appeal and such counsel have filed a brief for the petitioner. We are greatly indebted to the Association and to counsel for this service rendered in keeping with the best traditions of the bar and we express our thanks for their guidance.

On Petition for Rehearing

PER CURIAM.

In its petition for rehearing the State of New York asserts a conflict between our decision in this case and our recent decision in United States ex rel. Farnsworth v. Murphy, 2 Cir., 1953, 207 F.2d 885. New York points out that the Virginia Supreme Court of Appeals, in denying Oliver Smith relief, said:

"* * * this court has no jurisdiction to consider his petition and motions for relief *and in addition thereto the court finds no merit to the petitions and motions* filed herein * * *." (Emphasis added.)

The argument is now made that because the Virginia court expressed this opinion on the merits of Smith's claims, he is now barred from proceeding in the

federal district court. The Farnsworth case gives no support to this contention.

In the Farnsworth case we were concerned with a prisoner confined in New York as a multiple offender. Two of his three prior offenses were convictions in the federal district court for the District of Columbia. He had sought to attack these convictions by *coram nobis* in the District of Columbia. That court denied relief for three reasons: (1) because there was no showing that a retrial would result differently; (2) because of the delay; and (3) because Farnsworth " 'had had full opportunity at the time of his sentencing in New York to contest the validity of his prior conviction.' " [207 F.2d 887.] The Court of Appeals affirmed for the same reasons.

Farnsworth then sought habeas corpus in the Northern District of New York and it was denied. He sought to appeal *in forma pauperis* from that decision. We dismissed the appeal on the basis of the prior proceedings in the District of Columbia. We were of the view that the District of Columbia court was mistaken in suggesting that Farnsworth had not exhausted his state remedies. We concluded that in any event the opinion of that court was inconsistent with any belief by that court that it lacked power to decide the case on the merits. Since a federal district court and a federal appellate court with power to do so had already examined the merits of the petitioner's claims, we declined to reconsider them.

The situation here is quite different. The Virginia court held that it had no jurisdiction to consider Smith's claim. Our consideration of the Virginia authorities supports this conclusion. Thus the Virginia court's expression of opinion on the merits was entirely gratuitous. ▮ In any event it would make no difference even if Virginia had asserted jurisdiction and rejected Smith's constitutional claims on the merits. Smith sought certiorari from the decision and it was denied. Thus he has pursued and exhausted his state remedies and resort to the federal district court is now appropriate. If Virginia had asserted jurisdiction and held a hearing on the merits of the petitioner's claims this might affect the nature and scope of the review in the federal district court. Brown v. Allen, 1953, 344 U.S. 443, 460, 465, 73 S.Ct. 397, 97 L.Ed. 469. It is clear, however, that jurisdiction was not asserted, no hearing was held, Smith was not represented, and the matter was disposed of in summary fashion.

The petition for rehearing is therefore denied.