**UNITED STATES of America ex rel. Robert LAWRENCE, Petitioner,**

v.

**Edward M. FAY, Warden of Green Haven Prison, Stormville, New York, and the People of the State of New York, Respondents.**

United States District Court
S. D. New York.
Oct. 10, 1963.

Robert Lawrence, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, for respondents, Lester Esterman, Asst. Atty. Gen., of counsel.

FREDERICK van PELT BRYAN, District Judge.

Petitioner Lawrence, a prisoner in Green Haven State Prison at Stormville, New York, is serving a sentence of five to ten years as a multiple felony offender after he was convicted of burglary in the County Court of Queens County, New York, in 1954. He was sentenced as a multiple offender upon an information charging two prior felony convictions, one in California and one in New York.[1]

He applies to this court for a writ of habeas corpus upon the ground that his prior felony conviction in 1949 in California was void because he was not represented by counsel or apprised of his right to such representation in the California criminal proceedings.

---

1. The prior New York conviction is not under attack and so petitioner was plainly subject to sentence as a multiple offender in 1954, under § 1941 of the New York Penal Law, McKinney's Consol. Laws, c. 40, regardless of the validity of the California conviction. Nevertheless, and despite the fact that petitioner might have received precisely the same sentence in 1954, upon the prior New York conviction alone, his petition attacking the California conviction is not moot. The test is whether "it is *possible* that on re-sentence he will be sentenced to no more than the period he had already served."

(Emphasis added). United States ex rel. Smith v. Martin, 242 F.2d 701 (2 Cir. 1957); United States ex rel. Foreman v. Fay, 184 F.Supp. 535 (S.D.N.Y.1960). Since petitioner has already served considerably more time than the minimum five year term required for a multiple offender under §§ 1941 and 407(3) of the Penal Law, petitioner might apply to the sentencing court for a reduction of the maximum sentence were he a second offender rather than a third offender. Thus the possibility that he might be sentenced to no more than the period he has already served obviously exists.

In People v. McCullough, 300 N. Y. 107, 89 N.E.2d 901 (1949), cert. den. 339 U.S. 924, 70 S.Ct. 615, 94 L.Ed. 1346 (1950), the New York Court of Appeals held that the writ of error coram nobis is the appropriate remedy to set aside a judgment obtained in violation of a defendant's constitutional rights but that the writ is not available in New York to attack a judgment rendered in another jurisdiction. Since then resort to the federal courts, in the first instance, has been considered appropriate in situations such as we have here. See, e. g., United States ex rel. LaNear v. La Vallee, 306 F.2d 417 (2 Cir. 1962); United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir. 1957); United States ex rel. Smith v. Jackson, 234 F.2d 742 (2 Cir. 1956). This is for the reason that "Where state law is settled against examination * * * state remedies are considered exhausted. It would serve no purpose whatever to require the appellant to go through * * * useless and time-consuming motions * * *." United States ex rel. Tucker v. Donovan, 321 F.2d 114 (2 Cir. 1963).

Quite recently, however, there has been an attempt to devise an appropriate remedy in the New York State courts applicable where attack is made on the validity of an out of state conviction on which a multiple offender sentence is based. See People v. Wilson, 18 A.D.2d 424, 239 N.Y.S.2d 900 (1st Dept. 1963), leave to appeal granted May 31, 1963 (Fuld, J.). Thus the question of exhaustion of remedies in such a situation is no longer as easily resolved as it formerly was. However, though it would be eminently more sensible for the New York courts to deal with these cases in the first instance, People v. McCullough, supra, is still the last pronouncement of the highest court of the state on the subject and is likely to remain so until petitioner's ten year sentence expires in 1964. For that reason, as a practical matter and in the interests of justice, though with some reluctance, I deem it appropriate, in the exercise of my discretion, to pass on the merits of the petition here despite the fact that the validity of the California conviction was never questioned in the state courts.[2] See, generally, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

Petitioner's California conviction was based upon a plea of guilty to charges of burglary and forgery entered by him in the Superior Court for San Diego County, without counsel on July 7, 1949. His petition for habeas corpus alleges that "he was not represented by counsel and was never at any stage of the proceedings against him advised of his right to counsel." In opposition the respondent submitted, among other material, the stenographic transcript of a preliminary hearing in the Municipal Court of the City of San Diego which showed on its face that petitioner had specifically been advised of his right to counsel and had stated that he did not intend to get a lawyer. Petitioner then submitted a "traverse" in which he changed the theory of his petition. He now claims that although he was, in fact, advised of his right to counsel, he did not intelligently waive that right. He contends that,

"The San Diago [sic] Court, whether through inadvertence or design, left this relator to believe that the only counsel he was entitled to was that which he was able to engage himself, and the accused defendant not being able to employ any counsel answered that he did not want counsel.

"It cannot be presumed that the defendant, in the California proceedings, intelligently waived his right to counsel * * * ."

2. I note, in this connection that in the recent case of United States ex rel. Tucker v. Donovan, supra, which involved an attack on the validity of an out of state conviction in some ways analogous to that in the case at bar but involving extradition, the Court of Appeals of this Circuit held, after the Appellate Division had decided Wilson, that the petitioner had exhausted his New York remedies although he did not pursue his claims up through the state courts.

He adds by way of explanation,

" * * * Your deponent says that he having never been inculpated prior to this time he did not know that a lawyer would be assigned to him free of charge by the court if the petitioner had answered that he wanted a lawyer. And, the Court at no time allowed the defendant to know that such was the case. Further, the relator did not know what useful purpose could be served by counsel, at that stage, since he never decrided [sic] his guilt."

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) holds that, in the federal courts under the Sixth Amendment, "counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." Gideon v. Wainwright, 372 U.S. 335, 340, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Gideon v. Wainwright holds that the Fourteenth Amendment extends this right to defendants in state courts as well. Thus petitioner's contentions plainly raise a federal question.

In opposition to the petition respondent has submitted the docket transcript of petitioner's first appearance in the San Diego Municipal Court on May 11, 1949; the stenographic minutes of a preliminary hearing before Judge Smith of that court on June 20, 1949; the minutes of petitioner's arraignment in the Superior Court for San Diego County; and two affidavits from Judge Glen of that court, before whom petitioner was arraigned and pleaded guilty.

Petitioner does not challenge this record. He merely asks the court to draw inferences from it which would establish his contentions. Respondent, on the other hand, urges that no such inferences can be drawn and that the record viewed in its entirety establishes the petitioner's claim is devoid of merit.

The pertinent portions of the California record show the following:

On May 11, 1949, one day after a warrant for his arrest had issued, petitioner appeared in the California courts for the first time on the charges in question. He was twenty-two years old at the time and had never been in trouble before. The San Diego Municipal Court docket states, among other things, that he was informed on May 11th, "of his right to counsel at all stages of this proceeding." Bail was fixed at $1,000 and a preliminary hearing was set down for June 20, 1949.

There is a reporter's transcript of the hearing held on June 20th for the purpose of determining whether there was probable cause to believe that a crime had been committed. At the very outset of the hearing the following exchange took place between Judge Smith, presiding, and petitioner:

"THE COURT: Mr. Lawrence you were arraigned on this charge on May 11th of this year, is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: At that time, Mr. Lawrence, you were advised that you were entitled to be represented by a lawyer at all stages of the proceedings.

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, I understand you wish to have your preliminary hearing held now, is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, Mr. Lawrence, before you take the witness stand, and before you have your hearing, I want to again advise you that you are entitled to have a lawyer present of your own choosing. If you so desire, I will continue the case for that purpose.

"THE DEFENDANT: No, sir.

"THE COURT: Beg pardon?

"THE DEFENDANT: No, sir.

"THE COURT: What do you mean by that?

"THE DEFENDANT: I don't intend to get a lawyer."

At the conclusion of the hearing, during which the petitioner virtually admit-

ted his guilt, Judge Smith found probable cause and held the Commissioner to answer in the Superior Court and fixed bail.

There is no stenographic transcript of the proceedings in the Superior Court for San Diego before Judge Glen which took place a few weeks later. The minutes of that court, however, indicate that petitioner was "duly arraigned" and pleaded guilty to the charges against him. In addition two affidavits of Judge Glen have been submitted by the respondent. In substance they state that while Judge Glen does not remember petitioner specifically, it has always been his practice to follow the requirements of the pertinent California statutes governing a defendant's right to be represented by counsel and the conditions under which a defendant will be permitted to waive that right. Judge Glen states that he has "every reason to believe" that he followed that procedure in the case of the petitioner.

The pertinent California statutes referred to by Judge Glen are §§ 858 and 987 of the Penal Code which require that a defendant be advised of his right to counsel both before the preliminary hearing and at arraignment, and § 1018 of the Code which reads:

> " * * * No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall any plea of guilty of any other felony be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel. * * * "

To complete the picture it should be noted that § 1963 of the California Code of Civil Procedures creates a presumption that state officers regularly perform their official duties. It may also be noted that California was one of the first states to adopt an effective public defender system to protect the rights of indigent defendants. The widely respected California public defender system ante-dates the conviction under attack here.

The record shows that petitioner was fully apprised of his right to counsel at every stage of the California proceedings against him. His contention that he was led to believe that he could get representation only if he paid for it is patently an afterthought devised fourteen years after the event and after he found that the stenographic minutes of the preliminary hearing before Judge Smith belied his contention that he was not advised of his right to counsel at all. It is scarcely necessary to comment on his afterthought. It is sufficient to say that the implications which petitioner seeks to have drawn from the transcript of the preliminary hearing are wholly unwarranted and that Judge Glen's affidavits demolish his claim.

Nothing could be added to this record and no good purpose could be served by holding a hearing in this case. The various docket entries, minutes and stenographic transcripts which respondent has submitted are plainly all that has been recorded on the subject. These are supplemented and completed in so far as they can be by the affidavits of Judge Glen. Petitioner's original contention was shown to be patently false and contrived. Viewed against this record petitioner's latest, and now only contention, is equally false and contrived. It is wholly incredible on its face and nothing he could say at a hearing could lend veracity to it.

"[W]hen the habeas court has before it a full and uncontested record of state proceedings which furnishes all of the data necessary for a satisfactory determination of factual issues" a hearing on the questions raised by the petition is unnecessary. United States ex rel. McGrath v. La Vallee, 319 F.2d 308, 312 (2 Cir. 1963). In the circumstances here,

under the reasoning of the McGrath case, which on its face bears some resemblance to the case at bar, and of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), a hearing is not required. In Townsend v. Sain, 372 U.S. at p. 319, 83 S.Ct. at p. 760, 9 L.Ed.2d 770, the court was quite aware "that the too promiscuous grant of evidentiary hearings on habeas could both swamp the dockets of the District Courts and cause acute and unnecessary friction with state organs of criminal justice \* \* \*." To grant a hearing here would be to ignore that caution.

On the record before me petitioner's application for a writ of habeas corpus is in all respects denied.

It is so ordered.