897 F.2d 143
 James Louis WHITTLESEY, a/k/a Frank Wayne Pehringer,
Petitioner-Appellant,
v.
CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND; Stephen H.
Sachs, Attorney General for the State of Maryland; Richard
L. Dugger, Secretary of the Florida Department of
Corrections; Robert A. Butterworth, Attorney General of the
State of Florida, Respondents-Appellees.
 No. 88-7697.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1989.
Decided Feb. 28, 1990.
Rehearing and Rehearing In Banc Denied April 17, 1990.
 
 Stanley K. Joynes, III (argued), Rilee, Cantor, Arkema & Edmonds, Richmond, Va., for petitioner-appellant.
 Mary Ellen Barbera, Asst. Atty. Gen. (argued), Baltimore, Md. (J. Joseph Curran, Jr., Atty. Gen. of Md., Diane E. Keller, Asst. Atty. Gen., Baltimore, Md., on brief), for respondents-appellees.
 Before WIDENER, PHILLIPS and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 In this case we must decide whether a federal habeas corpus petitioner has fulfilled the statutory requirement of exhaustion of state court remedies, 28 U.S.C. Sec. 2254(b), despite having deprived the state court system of the opportunity to pass upon his habeas claims by escaping from prison, fleeing to another state, committing crimes in that other state, and being imprisoned there for those crimes. The district court held that petitioner failed to exhaust his state court remedies since his own conduct had denied the state courts "a full and fair opportunity to first consider the claims."
 
 
 2
 We affirm.
 
 I.
 
 3
 James Louis Whittlesey was convicted on August 29, 1978, in the Circuit Court for Baltimore County, Maryland, of robbery with a dangerous and deadly weapon and use of a handgun in the commission of a crime of violence. He received a ten-year sentence for the robbery offense and a five-year consecutive sentence for the handgun offense.
 
 
 4
 In late July 1980, Whittlesey escaped from the Brockbridge Correctional Institute in Maryland. He had not filed a direct appeal from his convictions, nor had he petitioned for state post-conviction relief in the years prior to his escape.
 
 
 5
 While a fugitive, Whittlesey committed other crimes in Florida. In October 1982, he was convicted for armed robbery and narcotics trafficking violations. He is currently serving a 136-year sentence in the Florida State Prison in Starke, Florida.
 
 
 6
 In June 1986, Whittlesey filed his first petition for post-conviction relief in Maryland state court. He alleged that his Maryland convictions were unconstitutional because he was mentally incompetent to stand trial, he did not knowingly and voluntarily waive his right to a jury trial, he was not given an opportunity for allocution at his sentencing proceeding, and he was denied effective assistance of counsel. The state court dismissed Whittlesey's petition without prejudice because his presence could not be secured for a post-conviction hearing. Whittlesey then filed a second petition for state post-conviction relief which was likewise dismissed because his presence could not be secured. An application for leave to appeal was denied by the Court of Special Appeals of Maryland. In addition, Whittlesey sought unsuccessfully to invoke the Interstate Agreement on Detainers as a means of transfer to Maryland for a hearing.
 
 
 7
 On October 19, 1987, Whittlesey filed a federal petition for habeas corpus, raising the same issues he had raised in his state petitions. The federal district court dismissed the petition without prejudice on the ground that Whittlesey had not exhausted his state post-conviction remedies.
 
 
 8
 Whittlesey appeals.
 
 II.
 
 9
 The federal habeas corpus statute commands that a federal court refrain from entertaining a habeas petition from a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. Sec. 2254(b). The exhaustion requirement is one of comity. It gives " 'the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' " Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) (quoting Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408-09, 30 L.Ed.2d 418 (1971)). Thus, state courts must be provided a full and fair opportunity to review earlier state court proceedings before a federal habeas writ will issue.
 
 
 10
 Whittlesey concedes that his presence at a Maryland state court post-conviction hearing was necessary if the state court was to have an opportunity to pass on his claims. He also concedes that he was unable to effectuate his presence at the hearing. Nonetheless, Whittlesey argues that he has complied with Sec. 2254(b)'s exhaustion requirement. He contends that by its own terms Sec. 2254(b) requires only that an applicant for habeas relief have exhausted the state court remedies available to him, and that since he is unable to return for the hearing there are no remedies available.
 
 
 11
 Whittlesey also asserts that his petition falls within the futility exception of Sec. 2254(b), which provides that a habeas writ may be granted despite a failure to exhaust state court remedies if "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." He emphasizes that since he is serving a 136-year sentence in Florida, it would be futile for him to wait until he has been released from prison in Florida to pursue his Maryland post-conviction remedy. He also stresses that he is nonetheless prejudiced by the continued validity of the Maryland sentence in that his Florida sentence might be shortened if the Maryland sentence were no longer in effect.
 
 
 12
 Whittlesey's arguments are without merit. He fails to appreciate that the difficulties he is encountering in obtaining habeas relief are difficulties he has brought on himself by escaping from prison in Maryland and committing crimes in Florida. As a general matter, it is well-settled that a criminal defendant may not flout compliance with state procedures and look to federal courts to save him from the consequences of his actions. See Reed v. Ross, 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984); Wainwright v. Sykes, 433 U.S. 72, 89-90, 97 S.Ct. 2497, 2507-08, 53 L.Ed.2d 594 (1977). Here, Whittlesey cannot expect federal courts to rescue him from the consequences of his escape and subsequent commission of crimes.
 
 
 13
 Whittlesey maintains that there are no state remedies available to him; however, this simply is not the case. The doors of the Maryland state courts stand open for him to present his complaints; that he is unable to enter through those doors until completion of his Florida sentence is the price he must pay for having escaped from the Maryland prison and committed offenses in Florida. It is his own criminal misconduct which has denied Maryland courts the opportunity to hold a hearing, develop a record, and thereby address his claims on the merits. We will not command the district court to review his habeas petition when his own unlawful acts have prevented the state courts from reviewing his claims.[1]
 
 
 14
 Analogous is the practice of federal courts of declining to review pending appeals challenging the convictions of escaped criminal defendants. See Estelle v. Dorrough, 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975); see also Feigley v. Fulcomer, 833 F.2d 29, 31 (3d Cir.1987) (holding federal habeas corpus review unavailable where state courts have determined that petitioner's escape waived the right to post-conviction relief). Had Whittlesey sought to appeal his case and then escaped, he clearly would not be entitled to appellate review. Nor would he be entitled to habeas relief in this case had he escaped from Maryland prison and remained an escapee. The fact that Whittlesey committed crimes in Florida while on escape and was incarcerated for those crimes should not place him in a preferred position to seek the writ.
 
 
 15
 Nor can Whittlesey avoid the exhaustion requirement by seeking refuge in the futility exception in the habeas corpus statute. Federal habeas corpus has traditionally been governed by equitable principles, among them the principle that "a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). Whittlesey had an opportunity to seek direct review of his conviction on appeal but failed to do so. He also could have sought habeas relief at any time during the almost two years prior to his escape, but he did not. That it may now be "futile" for Whittlesey to await completion of his Florida sentence to challenge his Maryland conviction begs the question of how that futility has come about. The equitable principles governing habeas relief will not permit Whittlesey to create a situation in which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.
 
 III.
 
 16
 The question is whether petitioner's simple willingness to present his claims to state courts satisfies the exhaustion requirement, as the dissent contends, or whether petitioner has impaired what was a fair opportunity for presentation of his claims through his own unlawful conduct. We hold the latter view, and we affirm the judgment of the district court.
 
 
 17
 AFFIRMED.
 
 PHILLIPS, Circuit Judge, dissenting:
 
 18
 A prisoner who escapes from incarceration in state A only to be incarcerated for conviction of another crime in state B while still a fugitive from state A makes an instinctively unattractive petitioner for federal habeas relief from the original incarceration. But aside from the ever-present possibility that notwithstanding the unattractiveness of his self-imposed predicament his habeas challenge could have merit, much more than individual interests are at stake here.
 
 
 19
 * This is one of those hard cases that invites the making of bad law--specifically here, bad exhaustion law. With all respect, I think the majority does just that, by beginning and ending its analysis with an ascription of dispositive legal relevance to the earlier escape that I think does not exist. Under the circumstances of this case, the fact of the escape has no more legal relevance to the availability of a federal habeas forum than do any other of the usual run of unsavory events and prior conduct that exist in the backgrounds of many federal habeas petitioners. That is to say, I think it has no legal relevance--whatever the thoughts of just deserts and the like it may inspire.
 
 
 20
 The only issue raised for us by the district court's dismissal of Whittlesey's petition is whether, within controlling legal principles, Whittlesey had exhausted his state remedies. More specifically, it is whether he had "fairly presented" the substance of the claims now sought to be raised in federal habeas so that the Maryland state courts have had the "opportunity" to address the merits of the claims. See Francisco v. Gathright, 419 U.S. 59, 63, 95 S.Ct. 257, 259-60, 42 L.Ed.2d 226 (1974) (per curiam); Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408-09, 30 L.Ed.2d 418 (1971) (per curiam). It is undisputed that Whittlesey had complied with state procedures by twice presenting the same claims he now seeks to present in his federal habeas petition to the Circuit Court for Baltimore County. Each petition was dismissed without prejudice, and his application for leave to appeal the second dismissal was denied by the highest Maryland court with jurisdiction over such an appeal. See Md. [Cts. & Jud.Proc.] Code Ann. Sec. 12-202(1) (1989). By any account, Whittlesey has properly "presented" these claims to the state courts. The mere fact that those courts have declined to address their merits does not preclude federal habeas relief. See Wilwording, 404 U.S. at 250, 92 S.Ct. at 407-08.
 
 
 21
 Neither, on the present record, could it be concluded that the state courts nonetheless have had no "opportunity" to address the merits of the claims. The grounds given by the state court for failing to do so--that Whittlesey could not personally appear to prosecute his claims--cannot suffice for the purpose. The state obviously could have imposed conditions upon the way in which Whittlesey could prosecute his claims while incarcerated in Florida--whether by affidavit, depositions, or other means not requiring his personal appearance--but so far as the record reveals, no such proffer was made nor any such possibility considered. See Cook v. Florida Parole and Probation Comm'n, 749 F.2d 678, 680 (11th Cir.1985) (per curiam); cf. Price v. Johnston, 334 U.S. 266, 285-86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (incarceration a valid basis for qualifying the right personally to plead and manage one's own cause in federal court); Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 111 (4th Cir.1988) (alternatives to personal appearance by incarcerated litigant in federal action discussed). Under the circumstances, the foregoing of a properly presented opportunity to consider the claims on any basis cannot be treated for exhaustion purposes as the absence of any opportunity. The obvious question is: "What else could the petitioner do?" And the answer, "Nothing," as obviously satisfies the ultimate concerns of comity underlying the exhaustion requirement.
 
 
 22
 As this indicates, the fact that the petitioner happens earlier to have escaped from his Maryland incarceration has no legal relevance to the concerns of comity--hence the requirements of exhaustion--that were the sole basis upon which he was denied a federal habeas forum. Neither of the bases upon which the fact of his escape is relied upon to deny him this forum has any merit.
 
 
 23
 First off, the escape has no bearing upon the threshold requirement that to seek habeas relief one must be "in custody" with respect to the conviction he seeks to challenge. One on "escape status" obviously cannot be "in custody" for this purpose, but under the circumstances of this case, Whittlesey, though an "escapee," is not now "on escape status" in relation to the Maryland conviction. Instead, he is under a Maryland detainer respecting that conviction while incarcerated in a Florida prison. In this situation, the Florida authorities hold him as an agent for the state of Maryland, and he is thereby "in custody" under 28 U.S.C. Sec. 2241(c)(3) for purposes of challenging the Maryland conviction. See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 489 n. 4, 93 S.Ct. 1123, 1126 n. 4, 35 L.Ed.2d 443 (1973); see also Maleng v. Cook, --- U.S. ----, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989) (per curiam).
 
 
 24
 Neither is he in the situation of one who has escaped and remains free from custody during the pendency of the very judicial proceeding which he seeks to invoke. As the majority points out, in that situation courts properly may decline to entertain the proceedings while the petitioner for relief remains at large. See, e.g., Estelle v. Dorrough, 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975) (per curiam); Feigley v. Fulcomer, 833 F.2d 29, 36 (3d Cir.1987); see also United States v. Snow, 748 F.2d 928, 930 (4th Cir.1984) (noting that while review not technically foreclosed it may properly be withheld). But that simply is not this situation, and it does not have the aspects that perfectly justify a court's declining to exercise a jurisdiction invoked before an escape has occurred. The majority's attempt to depict Whittlesey as one who seeks to realize a preferred position vis-a-vis one who escapes while an appeal is pending simply does not wash as a logical proposition.
 
 II
 
 25
 My view that Whittlesey has, on the facts of this case, exhausted the remedies available to him in Maryland's courts, see 28 U.S.C. Sec. 2254(b), is supported by the decisions of other courts, including the Supreme Court. The Supreme Court dealt directly with exhaustion in this context in Braden. Braden was incarcerated in Alabama on convictions for crimes he committed after escaping from custody while awaiting trial in Kentucky. When he presented his claim of denial of the right to a speedy trial to Kentucky's courts, the state courts rejected his claim, "apparently on the ground that since he had once escaped from custody the Commonwealth should not be obligated to incur the risk of another escape by returning him for trial." Braden, 410 U.S. at 491, 93 S.Ct. at 1128. On these facts, the Court held that Braden had "exhausted all available state remedies," concluding that the "fundamental interests underlying the exhaustion doctrine" were "fully satisfied." Id. at 489, 491, 93 S.Ct. at 1127, 1128.[1]
 
 
 26
 United States ex rel. Smith v. Jackson, 234 F.2d 742 (2d Cir.1956), also provides persuasive and direct support. In Jackson, the petitioner was originally convicted in Virginia, but escaped. He was convicted as a second felony offender and incarcerated in New York after he was apprehended in that state. He sought to challenge the Virginia conviction, but the Virginia courts dismissed his petitions for post-conviction relief because Jackson was a fugitive from Virginia justice and the courts had no jurisdiction over him. 234 F.2d at 746. The Second Circuit held that Jackson had a right to a federal habeas forum to hear his constitutional claims, explicitly rejecting the argument raised by the respondent in that case, and by the respondent here, that the petitioner's escape after his conviction, but while no court proceedings were pending, should preclude his right to all post-conviction relief until he could return to state court. Id. at 748.[2]
 
 III
 
 27
 A final word needs to be said about the majority's rejection of Whittlesey's argument that the futility exception, see 28 U.S.C. Sec. 2254(b), provides a basis for habeas jurisdiction. The majority rightly notes that Whittlesey failed to seek direct state appellate review or post-conviction relief prior to his escape. Whittlesey now contends, however, as part of his claim that he was denied effective assistance of counsel, that he instructed his attorney to file an appeal, and the attorney agreed, but never filed the appeal. I point this out not to imply that Whittlesey's contention should be believed, but only because the validity of that contention and Whittlesey's other claims will never be known if he is denied a federal habeas forum.
 
 IV
 
 28
 The majority's analysis does not, and cannot, obscure the reality that as things now stand, although the doors of Maryland's courts technically remain open to him, Whittlesey could spend the rest of his life in a Florida prison without the opportunity to litigate his constitutional claims.[3] That is not right. Whittlesey has exhausted the state remedies that are available to him at the present time. He has the right to a federal habeas forum to present his constitutional claims.
 
 
 29
 I respectfully dissent.
 
 
 
 [1]
 This fact alone is sufficient to distinguish this case from the situation represented in Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), where the state court did in fact review and reject petitioner's speedy trial claim on the ground that it did not have to return petitioner for trial and risk his escape for a second time. The dissent protests that in Braden "no action" was taken by the state courts on petitioner's complaint. However, the Braden court of appeals stated that "Kentucky denied [petitioner's] subsequent motion to quash the indictment or in the alternative to return him for trial. In October 1970, the Kentucky Court of Appeals denied appellee's petition for mandamus to force the Jefferson County authorities to request his return for trial or to dismiss the indictment." 454 F.2d 145, 146 (6th Cir.1972). It is clear that the state courts considered and rejected petitioner's claim. In addition, the state conceded in Braden that petitioner had exhausted his state remedies. 410 U.S. at 492, 93 S.Ct. at 1128
 Moreover, we perceive nothing in Braden to suggest an inflexible rule that no matter how egregious petitioner's conduct and no matter how difficult it was for the state court to secure his presence, the exhaustion requirement would invariably be satisfied by the mere filing of a habeas petition. Braden and cases subsequent emphasize that the exhaustion requirement is rooted in concerns for comity. See Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); Duckworth v. Serrano, 454 U.S. 1, 2, 102 S.Ct. 18, 18, 70 L.Ed.2d 1 (1981); Preiser v. Rodriguez, 411 U.S. 475, 491-92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). We can think of no worse breach of comity than forcing a state to secure the presence of one who has escaped from state custody in order to rule on his dilatory claim or, in the alternative, for a federal court to proceed without the benefit of state court views and findings. Moreover, the comity concerns apply with much greater force here than they did in Braden. There, petitioner's habeas claim involved a challenge to a state detainer which sought to bring him to trial for the first time, whereas here Whittlesey seeks to attack collaterally a presumptively valid state judgment of conviction.
 
 
 [1]
 The Court also noted that Braden, like Whittlesey here, had "made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes." Braden, 410 U.S. at 491, 93 S.Ct. at 1128
 The majority says that Braden 's finding of exhaustion is distinguishable because there "the state court did in fact review and reject petitioner's speedy trial claim on the ground that it did not have to return petitioner for trial and risk his escape for a second time." At 146 n. 1. The Sixth Circuit panel's opinion indicates that the state trial court "took no action" on Braden's initial petition, and subsequent petitions were summarily rejected. 454 F.2d 145, 146 (6th Cir.1972). As indicated in text, the Braden majority understood that the state court summarily rejected the claim simply because it thought the earlier escape relieved it of any obligation to return the petitioner for trial and thereby risk another escape. Braden, 410 U.S. at 491, 93 S.Ct. at 1128. The Braden dissent agreed with this view of the record. Id. at 503, 93 S.Ct. at 1133-34. The majority's conclusion from this that "state court views and findings" were critical to the Braden court's exhaustion ruling does not follow. Nothing in Braden suggests that effective exhaustion turned on the availability of the state court's "views and findings" on the merits of the speedy trial claim. In fact, as the Court understood the record, none were available.
 
 
 [2]
 The argument outlined and rejected by the Jackson court is nearly identical to the reasoning of the majority and the district court in this case
 The argument runs something like this: If [the petitioner] had stayed in Virginia he would have been able to attack his conviction in the Virginia courts, but by becoming a fugitive from justice he made himself ineligible for the Virginia remedies. Thus his inability to assert those remedies is self-imposed and he should not be excused from exhausting them as a prerequisite to federal relief.
 Jackson, 234 F.2d at 748.
 
 
 [3]
 Whittlesey is serving a 136-year prison sentence in Florida. The sentencing court for his robbery conviction retained jurisdiction over his case for 42 years, Whittlesey's actuarial life expectancy at the time he was sentenced, for the purpose of reviewing, and possibly interdicting, any parole release order