**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 06-6463

———————

MAYS WILSON TATE, JR.,

Petitioner - Appellant,

versus

WILLIAM PAGE TRUE, Warden, Sussex I State
Prison; GENE M. JOHNSON, Director, Virginia
Department of Corrections; JUDITH WILLIAMS
JAGDMANN, Attorney General of the State of
Virginia,

Respondents - Appellees.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.   Jackson L. Kiser, Senior
District Judge.  (7:05-cv-00422-jlk)

———————

Argued:  December 4, 2007         Decided:  February 13, 2008

———————

Before TRAXLER, Circuit Judge, HAMILTON, Senior Circuit Judge, and
John Preston BAILEY, United States District Judge for the Northern
District of West Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** David Paul Mitchel, MICHAEL J. BRICKHILL, P.C., Appomattox,
Virginia, for Appellant.   Leah Ann Darron, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellees.  **ON BRIEF:** Michael J. Brickhill, Appomattox, Virginia,
for Appellant.   Robert F. McDonnell, Attorney General, Richmond,
Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mays Wilson Tate, Jr. (Tate), a Virginia inmate, filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Virginia, challenging the validity of his convictions in the Circuit Court of Buckingham County, Virginia. The district court dismissed the petition, and a timely appeal was filed with this court. Finding no error, we affirm.

I

Tate was originally convicted by a jury in May, 1995, of capital murder, first degree murder, second degree murder, use of a firearm in the commission of a felony, breaking and entering while armed with a deadly weapon, and grand larceny of a vehicle. He was sentenced to three life terms plus forty-six years incarceration.

On June 25, 1996, the Court of Appeals of Virginia reversed Tate's convictions, finding that the trial court erred in allowing the Commonwealth to introduce too many details about other crimes allegedly committed by Tate, and remanded for a retrial. See Tate v. Commonwealth, 1996 WL 343898 (Va. App. June 25, 1996).

In January, 1997, Tate's retrial ended in a mistrial when it was discovered that he was not taking his anti-psychotic

medication.  The trial court determined that Tate was not competent to stand trial without the medication.[1]

Tate was tried for a third time in October, 1997.  Tate remained in the courtroom during the first day of trial.  However, following a morning recess on the second day, Tate informed the trial judge that his medication was making him too sleepy to remain awake during the trial.[2]  The following exchange then took place between Tate, his attorney, and the trial judge:

Tate:    Well, since I'm being - - have to take my medicine and I keep going to sleep while I'm out here, I don't feel like I can help [his attorney] very much while this trial is going on.  So I'd like to be held in my cell until we start our defense.  Then I'd like to show up then and - - that's what I'm requesting.

Court:   So you are requesting to be out of the courtroom while the Commonwealth is presenting its case?

Tate:    Yea.  I just want to be here for my defense and that's it.

Court:   All right.

---

[1]Tate was initially found to be incompetent to stand trial when he was first charged in 1994. He was later determined to be competent if appropriately medicated.

[2]Apparently, Tate was falling asleep during the first day of trial.  On the morning of the second day of the trial, the judge instructed the jury that Tate's medication (unidentified) was making him sleepy and not to infer that Tate was disinterested in his trial.

Tate: We've discussed everything, went over everything several different times so it's not nothing that I would miss.

Counsel: Judge, let me just say this. It's against my advice. My request would be that he be brought back - - if the court grants his request that he be permitted to go back to Buckingham, that he be brought back here tomorrow morning and let him make the decision tomorrow morning depending on where we stand at that time.

Court: All right. Mr. Tate, do you - - first of all, do you understand that it is against your lawyer's advice not to be present during the presentation of the Government's case against you?

Tate: Yes.

Court: Secondly, do you fully understand that by virtue of your absence your lawyer may from time to time be suffering or laboring at a disability not being able to confer with you on the spot as to certain things that may arise during the course of this trial?

Tate: Yes.

Court: And are you authorizing Mr. Snook to proceed in your absence?

Tate: I've pretty much left everything up to him anyway on this, all the decisions.

Court:    All right. Well, I can say I've had many instances where the reverse of the situation has occurred.  I've never had a defendant who has requested not to be present.  Of course, the constitution gives you the absolute right to be here.  You understand that?

Tate:    Yes.

Court:    May I ask then are you waiving your . . . Sixth Amendment right to confrontation?

Tate:    Yes.

Court:    Because you have a right to see these witnesses, to hear these witnesses, and to cross examine these witnesses. Certainly, Mr. Snook will be afforded that right to cross examine.  By the same token, the Sixth Amendment gives you the right to be here, to listen, and to confront the witnesses that are testifying against you.  You understand that?

Tate:    Yes.

Court:    You do.  All right.  I don't have a problem with this, with Mr. Tate not being present.

. . .

During Tate's absence, the Commonwealth called eleven witnesses to testify.  Tate returned on the fourth day and remained for the duration of the trial.  The jury convicted Tate of three counts of second degree murder, one count of breaking and entering,

6

and one count of grand larceny of an automobile. He was sentenced to serve twenty years for each offense, to be served consecutively, for a total of one hundred (100) years imprisonment.

The Court of Appeals of Virginia affirmed his convictions, and the Virginia Supreme Court denied Tate's petition for appeal.

In April, 2001, Tate filed a state habeas petition raising the following claims: (1) his Sixth and Fourteenth Amendment rights to be present at trial and confront witnesses were violated; and (2) counsel was ineffective for waiving the opportunity to have Tate reevaluated to determine whether he remained competent to waive his right to be present during the presentation of the prosecution's case and by failing to request a continuance or move for a mistrial because the medication Tate was required to take made him so drowsy that it prevented him from remaining sufficiently alert to assist counsel in the defense of his case. The state court denied relief, and the Virginia Supreme Court refused Tate's petition for appeal.

Tate then filed the underlying § 2254 petition raising the following claims: (1) his Sixth and Fourteenth Amendment rights to be present at trial and confront witnesses were violated; (2) the Commonwealth interfered with his right to effective assistance of counsel by involuntarily administering the anti-psychotic drug Mellaril to make Tate competent to stand trial; and (3) counsel was ineffective for waiving the opportunity to have Tate reevaluated to ascertain that he remained competent, by failing to request a

7

continuance or move for a mistrial, and by failing to object on confrontation, due process, or competency grounds to the trial proceeding in Tate's absence or while he was present but so drowsy that it prevented him from remaining sufficiently alert to assist counsel in the defense of his case.

The district court denied relief on all of Tate's claims. Tate filed a timely appeal with this Court.

II

We review *de novo* the district court's dismissal of Tate's habeas petition. Meyer v. Branker, 506 F.3d 358, 364 (4th Cir. 2007), (citing Allen v. Lee, 366 F.3d 319, 323 (4th Cir. 2004) (en banc)); Booth-El v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

"The federal habeas statute 'dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' Bell v. Cone, 543 U.S. 447 (2005) (internal quotation marks and citation omitted). The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006).

Under 28 U.S.C. § 2254(d), a district court may only grant federal habeas relief for state prisoners when state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

8

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2000).

The parameters of our review is set forth in <u>Lenz v. Washington</u>, 444 F.3d at 299-300, in which the court stated:

> Where the state court has adjudicated a particular claim on the merits, federal habeas relief is appropriate only in two circumstances. The first occurs if the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nonetheless arrives at a result different from [its] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>see also</u> <u>Lovitt v. True</u>, 403 F.3d 171, 178 (4th Cir. 2005). "An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] petitioner's case." <u>Rompilla v. Beard</u>, 545 U.S. 374, 380 (2005) (internal quotation marks omitted); <u>see also</u> <u>Booth-El v. Nuth</u>, 288 F.3d 571, 575 (4th Cir. 2002).
>
> The second circumstance where a federal court may grant habeas relief despite a state court decision on the merits is if the state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, in reviewing a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the habeas petitioner rebuts this presumption "by clear and convincing evidence." <u>Id</u>. § 2254(e)(1).

Tate first alleges that he was deprived of his right to be present at trial by the State's administration of the anti-psychotic drug, Mellaril.  On the second day of trial, Tate, noting that he had difficulty remaining alert during voir dire on the previous day, requested that he be permitted to remain outside the courtroom during the prosecution's case.  The trial court conducted a colloquy with Tate to ensure that his waiver of his right to be present was knowing and voluntary.

It is clear that a defendant may waive his right to be present during a trial.  United States v. Lawrence, 161 F.3d 250 (4th Cir. 1998).  Tate argues, however, that he was not competent to waive his right to be present due to the effects of the anti-psychotic drug.  The mere fact that a defendant is taking Mellaril does not establish that he is incompetent or incapable of understanding or waiving his constitutional rights.  See Burkett v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000).

The facts in the record are sufficient to support the state court's finding that the waiver was competently made.  At the trial judge's request, Tate was examined by a psychiatrist the week before trial to assess his competency to stand trial.  The examiner found Tate to be competent, noting that Tate was "much more succinct and clear in his thinking" than when the examiner conducted an evaluation several months before and deemed him

competent. The trial judge observed that Tate was "absolutely" competent to stand trial.

In an affidavit, Tate's trial counsel stated that "when [Tate] was on his medications he was able to understand what was happening and to make decisions with some degree of intelligence." At the colloquy during which Tate requested to be excused from a portion of the trial, Tate's trial attorney stated that he "ha[d] not found [Tate] to be irrational or illogical or psychotic or delusional or anything else in [his] discussions with [Tate] . . . or anything that suggests . . . that [Tate] was not competent to make a decision." Courts have placed emphasis on the fact that defense counsel has concluded that a defendant is competent. <u>Hernandez v. Ylst</u>, 930 F.2d 714, 718 (9th Cir. 1991)("While the opinion of Hernandez's counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings"); <u>United States v. Clark</u>, 617 F.2d 180, 186 (9th Cir. 1980)(fact that defendant's attorney considered defendant competent to stand trial was significant evidence that defendant was competent).

Tate was brought back into court on the third day of the trial. He reiterated his request to be absent from the courtroom for the prosecution's case and was permitted to be absent for the day. It is notable that Tate returned to the courtroom for the fourth and fifth day of trial, and, even though he was still on his

11

medication, there is no hint in the record that he was unable to remain alert.

For these reasons, we find no error in the district court's dismissal of this claim.

IV

Tate next contends that the State's administration of his medication interfered with his right to the effective assistance of counsel. In essence, Tate claims that due to the administration of the medication, he was too sleepy to assist his counsel.

The district court dismissed this claim on exhaustion grounds, stating as follows:

> In his second claim, Tate alleges that the Commonwealth interfered with his right to effective assistance of counsel by "involuntarily administering" the anti-psychotic drug Mellaril in order to make Tate competent to stand trial. Upon reviewing the record, I agree with the respondents that Tate did not properly present this claim as part of his state habeas proceedings, and that this claim is procedurally defaulted.
>
> In order to seek federal habeas review of a state court conviction, a petitioner must first exhaust available state court remedies. 28 U.S.C. § 2254(b). State courts must be "provided a full and fair opportunity to review earlier state court proceedings." Whittlesey v. Circuit Court for Baltimore County, 897 F.2d 143, 145 (4th Cir. 1990). As the United States Court of Appeals for the Fourth Circuit explained in Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (internal citations omitted), "the exhaustion requirement demands that the petitioner do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined."

12

Contrary to Tate's assertions, his second claim was not clearly presented as a ground for relief in his state habeas petition. While Tate contends that the state petition contained sufficient facts to assert a claim of state interference with effective assistance of counsel, a habeas petitioner "cannot simply apprise the state court of the facts underlying a claimed constitutional violation." Id. at 994. Instead, "the petitioner must also explain how those alleged events establish a violation of his constitutional rights." Id. It was not until Tate filed his response to the respondents' motion to dismiss that he asserted that the Commonwealth interfered with his right to effective assistance of counsel by administering the Mellaril. Even if this assertion was construed as an additional claim, the claim still would not have been properly before the state habeas court. A petition, like any other pleading, may not be amended without leave of court. See Virginia Sup.Ct. R. 1:8. Thus, the state habeas court lacked jurisdiction to adjudicate any new claim raised by Tate's response to the respondents' motion to dismiss. See Mallory, 27 F.3d at 995.

Since Tate failed to properly raise his second claim in his state habeas petition, the claim is procedurally defaulted. If Tate now attempted to raise the claim, it would be barred by Virginia Code § 8.01-654(B)(2). As a result, the court may not review the claim unless Tate demonstrates "cause for, and resulting prejudice from, the default or that he has suffered a fundamental miscarriage of justice." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Since Tate has not made either showing, his second claim must be dismissed.

Tate v. True, 2006 WL 208588, *4 (W.D. Va. January 26, 2006).

Having conducted a thorough and independent review of the record in this case, we agree with the district judge's reasoning and conclusion. As such, we find no error in his dismissal of this claim.

13

Finally, Tate contends that his counsel was ineffective in (1) failing to object to trial proceedings in Tate's absence; (2) failing to raise any objection to the trial proceeding while Tate's faculties were seriously affected by his medication; (3) refusing an on-the-spot psychological review; and (4) treating the medication issue as he did.

As noted by the district court, the state habeas court determined that Tate's allegations failed to satisfy the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The state habeas court noted that it was unclear how Tate would have benefitted from another psychiatric evaluation at trial, since he was taking his anti-psychotic medication and since he had recently been found competent to stand trial. The court also noted that it was unclear how Tate would have benefitted from a motion for a continuance or mistrial. Rather, it determined that a mistrial was not in order, since the trial court extensively questioned Tate before permitting him to remain outside of the courtroom, in an attempt to determine whether Tate was voluntarily and knowingly waiving his right to be present at trial. Additionally, the state habeas court emphasized that Tate's trial counsel was able to communicate with him and that Tate's trial counsel did not question his competency. In an affidavit submitted to the state habeas court, Tate's trial counsel stated that he believed Tate understood

what was happening at trial, and that there was never a time when counsel needed to consult with Tate during his absence. Tate's counsel also stated that his client was "largely indifferent" when he spoke with Tate each night about the evidence presented during trial. Counsel explained that Tate's decision to remain in his cell made sense at the time, since counsel could explain to the jury that the medication caused Tate's sleepiness.

The district court concluded that the state habeas court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts and dismissed this claim. The record demonstrates that Tate was competent to stand trial, and that he knowingly and voluntarily waived his right to be present at trial and confront witnesses. Consequently, Tate's trial counsel was not ineffective for failing to request an additional competency evaluation, move for a mistrial, or object to the trial proceeding in Tate's absence. Accordingly, we find no error in the dismissal of this claim.

<u>AFFIRMED</u>